IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────

ELLIOT O. CARLTON III,

                       Plaintiff,                          OPINION & ORDER

    v.

                                                               12-cv-695-wmc

DODGE CORRECTIONAL INSTITUTION,
CARLEY HENNING and AMY KLUG,

                       Defendants.
───────────────────────────────────────────────

Pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Elliot Carlton III, who is incarcerated at Dodge Correctional Institution, was granted leave to proceed against defendants Carley Henning[1] and Amy Klug for intentionally and unnecessarily inflicting pain to his ankles and already injured shoulder in violation of the Eighth Amendment. (Dkt. #15.) Now before the court is Klug's motion for summary judgment on the grounds that Carlton failed to exhaust his administrative remedies with respect to his claims against her. (Dkt. #72.) Because the undisputed facts establish that Carlton did not properly exhaust his administrative remedies, the court will grant that motion.[2] Because defendant Henning has failed to appear or otherwise defend this suit, however, the court will also enter default against her and hold a telephonic status hearing on September 12, 2014, at 10:30 a.m.

---

[1] Henning's name is spelled differently throughout the parties' various filings. The caption in this matter spells it "Henning," and the court will also do so throughout this opinion.

[2] In response, Carlton filed a motion to dismiss Klug's motion for summary judgment (dkt. #77) and a motion to amend that motion to dismiss (dkt. #78). The plaintiff subsequently filed a brief in opposition (dkt. #90) and responses to defendant's proposed findings of fact (dkt. #89) months after his response deadline had passed. Klug thereafter moved to strike these submissions as untimely (dkt. #97). Although Klug is correct that the submissions are significantly untimely and that Carlton sought no extension of the deadline, the court has nevertheless considered the arguments in all of Carlton's filings in deciding Klug's motion for summary judgment.

ALLEGATIONS OF FACT[3]

A. Administrative Complaints

This suit is premised on Carlton's allegations that Henning and Klug employed excessive force against him on July 4, 2012, by pushing him unnecessarily on his bad shoulder, grabbing him roughly by the ankles and shoving him. Carlton submitted seven internal offender complaints relating to that incident.

Carlton's first complaint, dated July 6, 2012, was received by the Institution Complaint Examiner ("ICE"), Joanne Bovee, on July 10, 2012. In it, Carlton complained about issues concerning his roommate and about the July 4 incident. Pursuant to Wis. Admin. Code § DOC 310.09(1)(a), Bovee avers that she returned Carlton's complaint the same day, because complaints must be typed or written legibly on provided forms. Pursuant to Wis. Admin. Code § DOC 310.09(4),[4] Bovee further avers that she advised Carlton that he needed to attempt to resolve the issue by contacting Sarah Kropp, the Infirmary Manager. Finally, Bovee directed Carlton to provide the ICE office with written documentation of his resolution attempts and, if still unable to resolve the issue within a reasonable amount of time, to resubmit the complaint for ICE processing within fourteen days of the date of incident. Carlton failed to resubmit the first complaint.

Carlton did, however, submit a second complaint, dated July 18, 2012, which was received by the ICE's office on July 19, 2012. He again complained about issues concerning his roommate and about the July 4 incident. Bovee avers that she returned *this* complaint

---

[3] In this summary of material facts, the court resolves all legitimate disputes of fact in plaintiff's favor, as well as views all facts in a light most favorable to plaintiff, as the non-moving party. *Anderson v. Libery Lobby, Inc.*, 477 U.S. 242, 255 (1986).
[4] Wis. Admin. Code § DOC 310.09(4) states: "Prior to accepting the complaint, the ICE may direct the inmate to attempt to resolve the issue."

2

to Carlton the same day because complaints must contain only a single, clearly-identified issue pursuant to Wis. Admin. Code § DOC 310.09(1)(e), and that before the complaint was accepted, Carlton needed to attempt to resolve the issue by contacting Kropp. (*See* Bovee Aff. Ex. 1002 (dkt. #75-2) 4.) Apparently, Carlton also failed to resubmit this second offender complaint.

Carlton submitted a third offender complaint dated July 30, 2012, which ICE received the next day. Carlton complained that he could not "seem to get Mrs. Sara Kropp to try and settle this matter" and that she continued to "stonewall" the investigation. (*See id.* at 5.) That complaint was returned to Carlton on July 31, 2012, "for the reason(s) listed in the ICE return letter previously sent to you." (*Id.* at 6.)

Carlton appears to have next corresponded with the office of the Correction Complaint Examiner ("CCE"). The return letter, dated September 5, 2012, indicated to Carlton that the CCE could not process his complaint, because it had been "returned back to [him] by the DCI ICE Department"; that "[c]omplainant has the option to resubmit his complaint to the DCI ICE Department for processing if he follows and completes the directives stated in the ICE complaint return letter"; and that he could only submit an appeal to the CCE's office upon an unsatisfactory resolution of his complaint. (*Id.* at 7.)

Carlton then submitted his fourth offender complaint, dated September 14, 2012, to ICE, which it received on September 21, 2012. That complaint stated that his ankles continued to hurt because of Henning's assault and that he needed to see a foot doctor. (*Id.* at 8.) Bovee returned that complaint on September 21, 2012, telling Carlton that he needed to attempt to resolve the issue by contacting Beth Dittman. Bovee admits that this was an error, and that the response should have instructed Carlton to write to Kropp. She

3

further directed him to provide the ICE office with written documentation of his attempts to resolve the issue, and if unable to resolve the issue after a reasonable amount of time, to resubmit his complaint to ICE for processing within fourteen days of the date of incident. Again, Carlton failed to resubmit the complaint. (*See id.* at 9.)

Almost a year later, Carlton submitted his fifth offender complaint, dated June 26, 2013, again complaining of issues surrounding an alleged assault by Henning on July 4, 2012. ICE Michael Patten returned that offender complaint on June 27, 2013, indicating that he needed to attempt to resolve the issue by contacting Kropp or A. Scarpia. Patten also advised Carlton that he needed to present written documentation of his attempts to resolve the issue as directed, and that written documentation "means responses to interview requests and other written responses from the staff contacted." Finally, Patten stated that if Carlton was unable to resolve the issue after a reasonable amount of time, he could resubmit his complaint to the ICE office for processing "within 14 days of the date of incident." (*See id.* Ex. 1003 (dkt. #75-3) 2.) Carlton never resubmitted this complaint.

Carlton submitted another offender complaint, DCI-2013-12514, dated June 26, 2013, which was received the next day. For the sixth time, he complained about the alleged assault on July 4, 2012. Patten recommended that the offender complaint be rejected on June 27, 2013, because it was submitted beyond the 14-day calendar limit. Carlton submitted a request for review of the rejection on July 10, 2013; Warden James Schwochert accepted the ICE recommendation and rejected the complaint the next day.

Finally, Carlton submitted his seventh offender complaint, DCI-2013-12800, on June 26, 2013. Like the other complaints, it, too, focused on the July 4, 2012, incident. (*See* Bovee Aff. Ex. 1005 (dkt. #75-5) 1-4.) Patten recommended on July 2, 2013 that the

4

complaint be rejected, because the issue had been addressed previously through Carlton's use of the Inmate Complaint Review System ("ICRS"). Carlton submitted a request for review on July 10, 2013; Warden James Schwochert accepted the ICE recommendation and rejected the complaint the next day.

On July 18, 2013, Carlton submitted a Request for CCE Review of complaints DCI-2013-12514 and DCI-2013-12800. On August 18, 2013, Karen Gourlie from the CCE Office returned Carlton's correspondence, advising him that the CCE does not review rejected offender complaints pursuant to Wis. Admin. Code § DOC 310.13(3).

At that point, now more than a year after the incident on July 4, 2012, Carlton apparently gave up, submitting no further offender complaints alleging that Klug and Henning assaulted him at Dodge Correctional Institution.

OPINION

**I. Exhaustion of Administrative Remedies**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Seventh Circuit, exhaustion of administrative remedies is a "condition precedent to suit." *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002); *see also Perez v. Wis. Dep't of Corr.*, 183 F.3d 532, 535 (7th Cir. 1999) (holding that where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits").

Moreover, the PLRA requires "proper exhaustion; that is, the inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (internal quotation marks omitted). "If the prison's administrative authority rejects a complaint because the prisoner failed to use the prison grievance system properly, the prisoner runs the risk that his claim will be unexhausted indefinitely." *Sanders v. Lundmark*, No. 11-cv-206-slc, 2011 WL 4699139, at *2 (W.D. Wis. Oct. 5, 2011) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)). "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The Wisconsin Department of Corrections maintains an Inmate Complaint Review System in all state adult correctional facilities in order to afford inmates "a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin. Code § DOC 310.01. Once an inmate files a formal complaint, an ICE is assigned to investigate and recommend a decision to the "appropriate reviewing authority," such as a warden, bureau director, administrator or designee who is authorized to review and decide an inmate complaint at the institution level. *Id.* at § DOC 310.07(2). An ICE may return a complaint to the inmate if it does not comply with ICRS procedure. *Id.* at § DOC 310.07(1). If an inmate has submitted a proper complaint that complies with procedure, he has the right to appeal any adverse decision to the CCE, who will review the complaint and make a recommendation to the Office of the Secretary. *See id.* at § DOC 310.13. The Secretary of

the Wisconsin Department of Corrections shall review the CCE's report and make a final decision. *See id.* at § DOC 310.14.

Here, Klug presented evidence that Carlton submitted *seven* offender complaints. The first four were rejected and returned to Carlton because he failed to comply with Wis. Admin. Code § DOC 310.09(4) when directed. The fifth complaint, filed nine months later, was rejected for the same reason; the sixth was rejected as untimely and thus could not serve to exhaust his administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Finally, the seventh complaint was rejected because the issue had been previously addressed through the ICRS. *See* Wis. Admin. Code § DOC 310.11(5)(g). Accordingly, Klug argues, Carlton has failed to exhaust his administrative remedies properly, and the court cannot consider the merits of this suit.

Carlton opposes the motion on multiple grounds. First, he argues that he had good cause for his late filings, because the complaint required investigation. He appears to be relying on Wis. Admin. Code § DOC 310.09(6), which permits an ICE to accept a late complaint for good cause. The problem with this argument is that while the state *may* accept a late-filed complaint and address its merits, a refusal to accept a late complaint does not constitute exhaustion of a prisoner's remedies, since "this position would leave § 1997e(a) without any oomph." *Pozo*, 286 F.3d at 1025.

Next, Carlton argues that there is still a genuine issue of material fact with respect to the merits of this case. In the Seventh Circuit, however, exhaustion is a condition precedent

7

to suit; this court cannot reach the merits until it has resolved the exhaustion issue. *See Perez*, 183 F.3d at 535 (where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits").

Carlton next argues that Welcome Rose has not submitted an affidavit. It is unclear to the court why this would make any difference in analyzing Klug's motion for summary judgment, and Carlton offers no further explanation. The court concludes that this argument is so underdeveloped as to be waived. *See Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010) (noting that "underdeveloped arguments are considered waived").

Carlton also argues that there is no proof that Bovee actually returned his complaints to him on July 10 and September 21, and that the CCE letter mentions only that complaints were returned to him on 7/19/2012 and 7/31/2012. (*See* Bovee Affidavit Ex. 1002 (dkt. #75-2) at 7.) Despite Carlton's assertion otherwise, defendants *do* submit an accompanying letter showing that the fourth offender complaint was returned on September 21, 2012 (*id*. at 9), and that the first offender complaint was returned with instructions on July 10, 2012 (*id*. at 12). Carlton presents no contrary evidence to raise a genuine dispute of material fact on this point. He does not even aver, for example, that he did *not* receive his first complaint back. Furthermore, in his response to defendants' proposed findings of fact, he concedes that Bovee did, in fact, return his complaint with instructions on July 10, 2012, as she averred. (*See* Pl.'s Resp. DPFOF (dkt. #89) ¶¶ 11-12.) Accordingly, there is no genuine dispute of fact as to the timely return of his administrative complaints.

Finally, in his opposition brief, Carlton contends that Bovee and Patten "strategically deviated from processing and investigating" his complaint, hindering his ability and desire to make a claim. He points in support to Bovee's error in responding to his fourth offender

8

complaint as "blatant proof" that she obstructed his attempts to seek relief. He also submits an Inter-Office Memorandum he received from Warden Schwochert, stating that Carlton's correspondence was "being forwarded to Rick Phillips and Sara Kropp to follow on." (Carlton Aff. Ex. 103 (dkt. #91-1).) Thus, he argues that the proper individuals were informed about his claim and that he exhausted his administrative remedies.

Unfortunately for Carlton, he *never* submitted evidence of an attempt to comply with ICE's directives, as he had been repeatedly instructed to do pursuant to the DOC's grievance procedure, before simply submitting new complaints. (*See* Pl.'s Resp. DPFOF (dkt. #89) ¶¶ 11, 15, 17, 20, 22.) "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Pozo*, 286 F.3d at 1023. Thus, this is not a case in which Carlton "properly followed procedure and prison officials were responsible for the mishandling of his grievance." *Dole*, 438 F.3d at 811. Rather, this is a case in which Bovee and Patten gave Carlton "instructions on how to proceed and [Carlton] ignored or improperly followed those instructions." *Id.* "His subjective belief that he was being thwarted [is] insufficient to create a genuine issue of material fact." *Steiskal v. Lewitzke,* 553 F. App'x 611, 616 (7th Cir. 2014) (citing *Obreicht v. Raemisch,* 517 F.3d 489, 493 (7th Cir. 2008)).

Even the erroneous instruction Bovee gave Carlton on submission of his *fourth* unexhausted complaint, indicating he should follow up with Dittman, rather than Kropp, does not allow for a reasonable inference that prison officials *intentionally* mishandled his claim. Moreover, Bovee's error in fact had no effect on Carlton's actions, since Carlton acknowledges his failure to provide the requested documentation of *any* attempt to resolve the issue informally. Likewise, Carlton's contention that the appropriate contact (Kropp)

ultimately found out about his allegations -- even though he never submitted any documentation of his resolution attempts and never resubmitted his complaints with the required information -- does not affect the outcome of this case, since the Seventh Circuit maintains a "strict compliance requirement." *Dole*, 438 F.3d at 811. Accordingly, Carlton failed to exhaust his administrative remedies, and Klug is entitled to summary judgment.

The court is sensitive to the numerous pitfalls that the DOC's grievance process presents. *See Steiskal*, 553 F. App'x at 616. The record here is certainly not a model of efficient process, much less efficient facilitation of a potentially legitimate complaint. Indeed, there is something quite Kafkaesque about Carlton's efforts to clear ICE's administrative hurdles not once but seven times, not to mention two unsuccessful attempts to obtain review of ICE's rejections by CCE. Equally troubling is ICE's changing basis for rejection and continued suggestions that he resubmit after informal consultation, while noting in the same response that Carlton must resubmit the complaint "within 14 days" of the *incident* -- a window of opportunity that had closed no later than the submission of his third complaint. Still, Carlton must at least show that he "followed up with the ICE by resubmitting his grievance" *after* actually engaging in the prescribed grievance procedure or "even providing the ICE with his documentation showing that he followed the directive to attempt to follow the prison's established grievance procedure." *Id.* As in *Steiskal*, Carlton failed to offer any proof that he at least attempted to satisfy the DOC's exhaustion requirement in the way that the ICE required. Accordingly, he cannot proceed past summary judgment.

**II. Default**

Carlton has also moved for entry of default against defendant Henning, who was apparently a contract Nurse's Aid at Dodge Correctional Institution and who is not represented by the Department of Justice in this matter. (Dkt. #85.) Henning was served on June 24, 2013. (*See* dkt. #34.) To date, she has failed to answer, defend or otherwise respond in this matter, and her deadline for doing so has long passed. The court will, therefore, grant Carlton's motion for entry of default against her.

Entering default against Henning in this matter is admittedly somewhat troubling, if only because Carlton's claims against her appear to suffer from the same defect that entitled Klug to summary judgment -- failure to exhaust administrative remedies properly. Indeed, the seven complaints that Carlton filed pertain to Henning as well as Klug, and it is undisputed that these are the only complaints Carlton filed alleging that Klug and Henning assaulted him on July 4, 2012. (*See* DPFOF (dkt. #74) ¶ 32; Pl.'s Resp. DPFOF (dkt. #89) ¶ 32.) Still, Henning's wholly unexplained silence, despite being served more than a year ago, suggests that default is appropriate in this case. *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (decision to enter default lies within the district court's discretion). Should Henning hereafter appear to defend this suit, the court may entertain a request to reconsider the entry of default, but she must make any such request promptly and, just as importantly, she must show good cause for her yearlong delay. *See United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989).

In the meantime, now that the court has entered default, it is appropriate to proceed to consideration of a default judgment. Following an entry of default, the court accepts as true all of the factual allegations in the complaint, except those relating to damages. *In re*

11

*Catt*, 368 F.3d 789, 793 (7th Cir. 2004). The allegations in a complaint are insufficient evidence upon which to enter an amount of judgment. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999). Rather, "[e]ven when a default judgment is warranted based on a party's failure to defend, . . . [t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Catt*, 368 F.3d at 793 (quoting *Credit Lyonnais*, 183 F.3d at 155 (citations omitted)). Accordingly, the court will hold a telephonic status conference to set a hearing on default judgment. That conference will take place on September 12, 2014, at 10:30 a.m. Carlton should be aware that to be entitled to any damages, he must be prepared to offer at the hearing evidence of damages that he sustained from Henning's actions on July 4, 2012, such that the court can arrive at the proper amount of damages, if any, with reasonable certainty.

ORDER

IT IS ORDERED that:

1. Defendant Amy Klug's motion for summary judgment (dkt. #72) is GRANTED.

2. Plaintiff Elliot O. Carlton III's motion to dismiss defendant's motion for summary judgment (dkt. #77) is DENIED.

3. Plaintiff's motion to amend his motion to dismiss (dkt. #78) is GRANTED.

4. Plaintiff's motion for entry of default (dkt. #85) is GRANTED. The earlier motion (dkt. #82) is DENIED as moot.

5. A telephonic status hearing is set for Friday, September 12, 2014, at 10:30 a.m.

Entered this 21st day of August, 2014.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge