IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELLIOT O. CARLTON, III,

                Plaintiff,                ORDER

v.

                                          12-cv-695-wmc

CARLY HENNINGS,

                Defendant.

---

On October 23, 2014, the court held a hearing on defendant Carly Hennings' motion to set aside default and an evidentiary hearing on damages. Plaintiff Elliot O. Carlton, III appeared *pro se;* Assistant Attorney General Brandon Flugaur appeared for dismissed defendant Amy Klug; and Attorney Paul Pytlik appeared for defendant Carly Hennings.[1] For all the reasons stated below, the court will grant Hennings' motion to set aside default and enter judgment in her favor.

## BACKGROUND

Carlton, a paraplegic inmate at Dodge Correctional Institution ("DCI"), brought this lawsuit pursuant to 42 U.S.C. § 1983, alleging that DCI Correctional Officer Klug and Nursing Assistant Hennings employed excessive force in removing him from his cell against his will on July 4, 2012. Specifically, Carlton alleges that Hennings grabbed his ankles, pushed down hard on them, and slammed them twice against his wheelchair. He also alleges that Klug shoved him backward for no reason by pushing on his bad shoulder. The Attorney General for the State of Wisconsin entered an appearance on behalf of Klug as a public employee, but because Hennings was an employee of a temporary employment

---

[1] Hennings' counsel advised at the hearing that his client has been improperly designated in the caption of this case as "Carly Henning." Going forward, the clerk and parties are instructed to change the spelling of Hennings' surname in the caption as now reflected above.

company, the State did not appear on Hennings' behalf. (*See* Notice of Appearance (dkt. #17); Acceptance of Service (dkt. #18).) Hennings was voluntarily served with the summons and complaint but did not enter an appearance either *pro se* or via counsel, apparently under the misapprehension that the State would continue to represent her as it did in response to Carlton's administrative complaint. (*See* Proof of Service (dkt. #34).)

This lawsuit then proceeded without Hennings for a period of more than a year. Carlton filed a number of motions for entry of default against Hennings, one of which the court denied as premature while taking the others under advisement. Klug also filed a motion to dismiss based on Carlton's failure to exhaust his administrative remedies.

The court subsequently granted Klug's motion to dismiss and entered default against Hennings. (*See* Aug. 21, 2014 Opinion & Order (dkt. #99).) In entering default against Hennings, the court was "admittedly somewhat troubl[ed], if only because Carlton's claims against her appear to suffer from the same defect that entitled Klug to summary judgment -- failure to exhaust administrative remedies properly." (*Id.* at 11.) Ultimately, however, the court concluded that Hennings' "wholly unexplained silence" for more than a year rendered the entry of default appropriate. (*Id.*) To determine what damages, if any, to award as a default judgment, the court held a telephonic status conference on September 12, 2014, and after speaking with Carlton, scheduled an evidentiary hearing for October 23, 2014.

On October 1, 2014, Hennings filed her first appearance in this case through Attorney Pytlik. On October 17, 2014, with the hearing fast approaching, she also moved to set aside the entry of default. According to Hennings' motion, she had presumed the State was representing her interests throughout the pendency of this lawsuit until she received notice of the entry of default from her employer, Guardian Health Staff (who was

in turn notified by the Attorney General's office). In response to Hennings' motion, the court declined to adjourn the evidentiary hearing, but reserved on the question of setting aside the default, intending to take up both questions on October 23.

## HEARING

At the October 23 hearing, Hennings' attorney noted that the State had protected Hennings' interests throughout the administrative proceedings involving Carlton's complaint, causing her to assume that it would continue to do so throughout the federal lawsuit as well. Hennings also represented that she remained in contact with staff at Dodge Correctional Institution throughout the lawsuit. Thus, counsel argued, Hennings had not deliberately flouted the legal system but instead had mistakenly believed she was doing all that was required. Carlton argued in response that Hennings' total failure to inquire as to whether she was represented at some point during the pendency of the lawsuit precluded granting her motion to set aside default.

Turning to the question of an award of damages as part of entry of default judgment, the court heard testimony from Dr. Roman Kaplan, Carlton's treating physician. Dr. Kaplan testified that he did not remember seeing Carlton for the incident in question, given that it occurred more than two years ago. In referring to his contemporaneous notes, however, he was able to confirm that in examining Carlton on September 17, 2012, he had noted no physical damage to Carlton's ankles, and no therapy was required. He also testified that he had seen Carlton *earlier*, on July 31, 2012, and that Carlton had not complained of any pain in his feet or ankles at that time. Even so, Dr. Kaplan testified that Carlton could have suffered pain at the time of the incident itself.

Carlton testified as to the pain he suffered during the July 4th incident, stating that he believed something in his ankle had "snapped" due to Hennings' actions. Carlton further testified that he had no memory of seeing Dr. Kaplan on July 31st. Much of his testimony and argument focused instead on Dr. Kaplan's refusal to permit him to see a specialist; he argued that prison staff had rebuffed his attempts to get a diagnosis and treatment, rendering him unable to present evidence of lasting damage from the July 4th incident.

## OPINION

Under Fed. R. Civ. P. 55(c), the court may set aside an entry of default for "good cause." The Seventh Circuit has further explained that to vacate an entry of default, the moving party must show: "(1) good cause for default (2) quick action to correct it and (3) meritorious defense to plaintiff's complaint." *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994). Because the court has not yet entered judgment, this test is "more liberally applied" than in the context of Rule 60(b), which governs relief post-judgment. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009) (quoting *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989)).

In *Pretzel*, the Seventh Circuit emphasized that the "defaulting party must show *good cause for its default* or the default order will not be vacated." 28 F.3d at 45 (emphasis added). Hennings nevertheless argues that this first element is met when there is "good cause" for the court to take action and that she need not show "good cause" for her error, relying on language in the Seventh Circuit's subsequent decision in *Sims v. EGA Prods., Inc.*, 475 F.3d 865 (7th Cir. 2007). *Sims* at least appears to stand for the proposition that there *may* be

4

good cause to vacate an entry of default, even in cases where the defendant has failed to offer a good excuse. *Id*. at 868. In that case, a corporation's insurance superintendent failed to arrange for a defense despite its contractual obligation to do so and also failed to alert the defendant to the need to protect its own interests. As a result, the district court entered default. After the magistrate recommended an award of $31.2 million in damages, the defendant hired its own lawyer to seek relief from the default.

On this record, the Seventh Circuit held that "[d]amages disproportionate to the wrong afford good cause for judicial action, even though there is no good excuse for the defendant's inattention to the case." *Sims*, 475 F.3d at 868. If nothing else, this holding leaves open the possibility of a defendant being allowed to challenge the impending entry of a disproportionately large damage award, even if it lacked a good excuse for the original default.

Here, Hennings' proffered excuse for her default is similar to that in *Sims*: she assumed the State would continue to represent her interests in court and did not deliberately spurn the judicial process, both submitting voluntarily to service and continuing to communicate with the DCI program coordinator should her participation be required. Hennings also points out that her employer, Guardian, has undertaken her defense now that she is aware the State Attorney General has not done so.

The court finds credible that a layperson would assume the entity that represented her interests in the first round -- the administrative proceedings -- would continue to do so in a subsequent lawsuit. What *is* surprising is the State's apparent failure to notify Hennings or her employer that it would not be undertaking her representation, much less that default motions were pending against her. Guardian may also be culpable to some

5

extent, for its apparent failure to establish a protocol for receiving notice of lawsuits against its contract employees from both the State and its employees.

All of this, however, is between the State and Guardian.  Certainly, Hennings is far from blameless for her default.  As Carlton pointed out at the hearing, she should have taken greater care to ensure her interests were adequately represented in this suit.  Even so, given the State's previous representation and subsequent decision to look the other way, her misapprehension of the situation is at least understandable.

The second *Pretzel* factor is prompt action to remedy the default.  Here, the court entered default on August 21, 2014.  At a telephonic status conference on September 12, a hearing on default judgment was set for October 23, 2014.  Hennings entered her appearance on October 1, and moved to vacate the entry of default on October 17.  While not inordinately slow, neither was this motion exactly prompt.  Moreover, Guardian and Hennings have not explained (1) how they suddenly became aware of the entry of default against her (after Carlton's multiple motions for default had been pending for months); and (2) why it took two more weeks after her appearance to move to vacate.

The third of the *Pretzel* requirements -- a meritorious defense -- weights much more clearly in Hennings' favor.  As recognized in the court's opinion on summary judgment, Hennings has the same defense to Carlton's claim as Klug did:  Carlton failed to exhaust his administrative remedies with respect to his excessive force claims in this case.  (Aug. 21, 2014 Opinion & Order (dkt. #99) 11.)

Absent a liberal application of the Rule 55(c) standard, Hennings might fall short of meeting the three-part test articulated in *Pretzel*, but for two significant factors.  *First*, there is no question of the merits of Hennings' defense.  As previously noted, the complaints that

6

Carlton filed pertained to Hennings as well as Klug. The undisputed facts on summary judgment for Klug establish that those complaints were the only ones Carlton filed regarding the incident on July 4, 2012. Thus, Carlton's failure to properly exhaust applies with equal force to both defendants. Were it not for Hennings' default, the court would have been barred from addressing Carlton's claims on the merits as to either defendant. *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

*Second*, given the evidence adduced at the hearing of October 23, there are significant flaws in Carlton's claims that go beyond the failure to exhaust. For example, despite claiming to have suffered severe, permanent injuries, Carlton was able to present no objective evidence that the July 4 incident caused him *any* injury at all. On the contrary, Dr. Kaplan's contemporaneous notes from his September 17 examination of Carlton indicate no evidence of injury, nor did Dr. Kaplan find a need for any therapy. Based on those notes, Dr. Kaplan credibly explained the exam he performed at that time and how he came to the conclusion that there were no injuries. (*See* Ex. (dkt. #110) 1116.) Even more telling, Dr. Kaplan saw Carlton just weeks after the July 4th incident (and well *before* the September 17th exam), but Carlton reported *no* pain or injury to his feet or ankles at that time. (*See id.* at 1137.)

At the hearing, Carlton did not actually dispute his failure to report any perceived injuries on July 31. Instead, Carlton testified that he did not recall seeing Dr. Kaplan on that date. Furthermore, while Carlton's medical records reveal at least some references to the July 4, 2012, incident (*see, e.g.*, Ex. (dkt. #110) 2515-19 (Health Service Requests referencing incident involving Hennings)), in only *one* request does he report pain or injury from that interaction (*see id.* at 2514). As already discussed, that request resulted in an

7

examination and a conclusion that no injury was present nor was therapy required. Simply put, Carlton has adduced no evidence of injury.[2]

This is not to say that no injury occurred. Perhaps Carlton suffered some physical damage that is no longer apparent or will not become apparent until he is examined by the specialist he contends is needed in his case. But the current lack of evidence before this court sharply curtails any possible monetary damages if default judgment were upheld. This lack of demonstrable injury also raises significant questions as to whether Carlton could ultimately prove his claim for excessive force. *See Outlaw v. Newkirk*, 259 F.3d 33, 839-40 (7th Cir. 2001) ("Moreover, the minor nature of Outlaw's injuries strongly suggests that the force applied by Mable was *de minimis*. . . . While a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, 'the degree of injury is relevant to determining whether the use of force could plausibly have been thought necessary in a particular situation,' and a minor injury supports the conclusion that the incident was 'at most . . . a *de minimis* use of force not intended to cause pain or injury to the inmate.'" (internal citations omitted)).

Although a close question in light of Hennings and her employer's long delay in coming forward to defend the claim of excessive force against her, given the obvious and meritorious procedural defense, the other serious evidentiary problems with Carlton's claim of excessive force and the minimal damages, if any, that Carlton was able to point to at the hearing, there is good cause to vacate the entry of default. For all the reasons discussed in

---

[2] Carlton also argues that Dr. Kaplan prevented him from acquiring such evidence by refusing to allow him to see a specialist, but as discussed at the hearing, those facts focus on a claimed denial of medical treatment, not on the narrowly-focused claim of excessive force at issue in this case. In any case, Carlton has failed to meet his burden to prove damages.

the court's order of August 21, 2014, Hennings is further entitled to dismissal of the claims against her without prejudice, due to Carlton's failure to exhaust his administrative remedies.

## ORDER

IT IS ORDERED that:

(1) defendant Carly Hennings' motion to vacate the entry of default (dkt. #111) is GRANTED.

(2) the clerk of court is directed to enter judgment in favor of Hennings and against plaintiff Elliot O. Carlton, III and close this case.

Entered this 2nd day of December, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge